197 D.P.R. 369, 2017 WL 1043189 (P.R.), 2017 TSPR 24

HÉCTOR L. SANTIAGO NIEVES, petitioner,

v.

BRAULIO AGOSTO MOTORS, INC. ET AL., respondents.

At the Supreme Court of Puerto Rico
*Number:* AC-2014-0031
*Resolved:* February 14, 2017
Feb. 14, 2017.

1. LABOR RIGHT—WORK RELATIONSHIP LAW—RETALIATION LAW, ACT NO. 115 OF DECEMBER 20, 1991.
Art. 2(a) of Act No. 115-1991 (29 LPRA [*Leyes de Puerto Rico Anotadas*; Laws of Puerto Rico, Annotated] sec. 194a(a)) provided that no employer may dismiss, threaten or discriminate against an employee in connection with the terms, conditions, compensation, location, benefits or privileges of employment because the employee offers or attempts to offer, verbally or in writing, any testimony, expression or information before a legislative, administrative or judicial forum in Puerto Rico, where the expressions are not of a defamatory nature nor constitute disclosure of privileged information as established by law.

2. ID.—ID.—ID.
Article 2(b) of Act No. 115-1991 (29 LPRA sec. 194a(b)) recognized that any person alleging a violation of this law **370** may bring civil action against the employer within three years of the date of such violation and request to be compensated for actual damage, mental anguish, reinstatement in employment, unearned wages, benefits and attorney's fees.

3. ID.—ID.—ID.
Article 1(b) of Act No. 115-1991 (29 LPRA sec. 194a(b)) provided that the term "employer" meant any person who has one or more employees and included the employer's agents.

4. ID.—ID.—ID.
Through Act No. 169-2014, the Legislative Assembly amended the definition of "employer" in Article 1(b) of Act No. 115-1991 (29 LPRA sec. 194a(b)) to provide that "employer" means all employers equally, whether public or private employers, public corporations or employer of any other type that currently exists or is created in the future, any natural or legal entity of any kind, and their agents and supervisors.

5. ID.—ID.—ID.
The structure and content of the anti-retaliation law show that the intention of the Legislative Assembly was not to impose individual responsibility on an employer's agents. That is, the allusion to agents does not create, nor institute, an additional and independent cause of action against agents in their individual capacity.

6. ID.—ID.—ID.
In Puerto Rico, laws have been enacted that impose civil liability on employers for the unlawful acts of their agents, management employees or supervisors. Act No. 115-1991 is precisely in line with that legislative model. The purpose of including both the employer and its agents in the definition of "employer" of Act No. 115-1991, was for the purpose of vicariously holding the employer liable for the actions of its agents. Thus, it explicitly eliminated the possibility that the employers of the employees who would be retaliated against, could argue that it was not them but their agents who committed such acts.

*Certified translation from the original text in Spanish into the target language English.*
*Done on 19/DEC/2019 by Veronique C. Haesebrouck – Certified Translator – 787-238-8781*

WESTLAW  © 2019 Thomson Reuters. No claim to original U.S. Government Works.  1

7. ID.—ID.—ID.

When the Legislative Assembly wished to extend civil liability beyond the employer, it expressly provided for it. The language used in the anti-retaliation law is different from that of other labor laws in which the legislator created a cause of action against any person who engages in the proscribed conduct and not only against the employer.

8. ID.—ID.—ID.

When an employer's agent fires, discriminates or threatens a fellow employee with respect to compensation, the benefits or privileges of his position, what he exercises is the authority of the employer. In **371** last instance, it is the employer who has the power to decide the employment status of an employee.

9. ID.—ID.—ID.

Act No. 115-1991 allows an aggrieved employee to file an action against his employer for retaliation by him or his agents but does not provide an independent cause of action against the agent who executed the acts. The inclusion of agents in the definition of "employer" is to recognize only the imposition of vicarious liability on the employer.

10. DAMAGES AND LOSSES—FAULT OR NEGLIGENCE—EMPLOYER'S LIABILITY—ACTIONS—DAMAGES AND ACTUAL LOSSES—IN GENERAL.

As a general rule, in the face of an employer's conduct, provided for and sanctioned by special legislation of a labor nature, the employee will only be entitled to the remedy provided by said law, without being able to resort to Article 1802 of the Civil Code, 31 LPRA sec. 5141. However, the exclusivity of these remedies does not exclude the civil liability of an employer for unlawful conduct in which he engages for reasons other than the mere violation of a provision of labor laws.

11. ID.—ID.—ID.—ID.—ID.—ID.

Labor laws do not exclude the liability that a person may have for independent unlawful conduct not included in the statute, in the pallium of Article 1802 of the Civil Code, 31 LPRA sec. 5141. Therefore, if the labor law does not provide for and penalize the conduct committed or this constitutes an autonomous culpable or negligent act, in the absence of special legislation, this article is fully enforceable. That is, in that scenario, the aggrieved employee may resort to the general provisions of non-contractual civil liability against any person who has violated a legal duty to act, provided that a special law does not prohibit it.

## Synopsis

APPEAL of a SENTENCE by *Aleida Varona Méndez, María Del Carmen Gómez Córdoba* and *Mirinda Y. Vicenty Nazario*, Js. of the Court of Appeal, which upheld the opinion of the Court of First Instance because it understood that the inclusion of the word "agent" in the definition of "employer" provided by Act No. 115-1991 does not have the effect of imposing individual liability on the employer's agents. In addition, it ruled that when there is a special law of a labor nature in the context of the requested remedy, such as Act No. 115-1991, in the case of retaliation, the use of other remedies provided in other general provisions, such as those set out in Article 1802 of the Civil Code, 31 LPRA sec. 5141, does not proceed. As a result, it concluded that the primary forum did not err in dismissing both the cause of action brought under this article and the cause of action for retaliation against Ms. Norma Agosto Flores and Mr. Braulio Agosto Vega in their personal capacity. *The Judgment of the Court of Appeals is upheld.*

*Manuel Porro Vizcarra* and *Myrmarie Laborde Vega,* of *Manuel Porro-Vizcarra Law Offices,* lawyers of the petitioning party; *María Eugenia Santori Aymat* and *Debbie E. Rivera Rivera,* of *Santori Aymat & Rivera, LLC,* lawyers of the appealed party.

ASSOCIATE JUDGE MR. MARTINEZ TORRES issued the opinion of the Court.

*Certified translation from the original text in Spanish into the target language English. Done on 19/DEC/2019 by Veronique C. Haesebrouck – Certified Translator – 787-238-8781*



WESTLAW  © 2019 Thomson Reuters. No claim to original U.S. Government Works.  2

It is for us to clarify the scope of a statute of a labor nature which, despite being profusely applied in our jurisdiction, lacks a uniform interpretation. Specifically, we must interpret whether Act No. 115-1991, *infra,* provides for the imposition of personal liability on the agents of an employer. A comprehensive review of this legislation shows that its objective is that those employees aggrieved by the proscribed conduct committed by their employer have a cause of action against them. Thus, as set out below, we state that the mention of agents in the definition of "employer" is only for the purpose of recognizing the vicarious liability of the latter for the acts of the formers. It does not extend to creating a cause of direct action against agents in their personal nature.

I

Mr. Héctor Santiago Nieves filed a complaint under Act No. 80 of May 30, 1976 (29 LPRA sec. 185a *et seq.* ), Act No. 115-1991, *infra,* Arts. 1802 and 1803 of the Civil Code, 31 LPRA secs. 5141 and 5142, and Act No. 2 of October 17, 1961 (32 LPRA sec. 3118), against the respondent Braulio Agosto, Inc., its owner, Mr. Braulio Agosto Vega and Ms. Norma Agosto Flores, President of Braulio Agosto, Inc. Mr. Santiago *373 Nieves reported that he worked as General Manager and Consultant at Braulio Agosto, Inc., from January 1, 2011 to June 25, 2012. He argued that at the beginning of 2012, he assisted in an audit of the corporation tax and sales tax returns performed by the Treasury.

He explained that following said audit, the Treasury Department issued a preliminary report in which it imposed a penalty of $373,092.40 on Braulio Agosto, Inc., for the deficiencies found. As a result, he said, on June 21, 2012, Ms. Agosto Flores and Mr. Agosto Vega met him and expressed, among other things, their displeasure with the penalty imposed by the Treasury Department, as well as their annoyance with the way he handled the information during the audit, and they requested that he resolved the issue. Petitioner's argument, p. 4. He narrated that, subsequently, Ms. Agosto Flores handed him a letter of dismissal, in the presence of the sales manager, and told him that Mr. Agosto Vega had decided to relieve him of his duties. Therefore, he claimed that he was dismissed without cause and in retaliation for having participated in the investigation carried out by Hacienda. In addition, he requested $300,000 for the damage he suffered.

For their part, the respondents submitted their reply.[1] They argued that Mr. Santiago Nieves did not participate in the investigation carried out by Hacienda. They also argued that he merely provided the required documentation and information as part of his functions *374 during the audit. At the same time, they denied that Hacienda had notified him of deficiencies and imposed a penalty on Braulio Agosto, Inc. They stated that the meeting of June 21, 2012 was for the sole purpose of discussing poor execution of Mr. Santiago Nieves. They added that the dismissal was not made in retaliation or contravention of Act No. 80, *supra,* but was caused by the deficient performance of Mr. Santiago Nieves.

Thus, the primary forum notified an order requiring Mr. Santiago Nieves to explain why he included as co-defendants Ms. Agosto Flores and Mr. Agosto Vega in their personal capacity. The Court of First Instance reasoned that, in the event that the claim for dismissal without cause and retaliation was proved, only its employer Braulio Agosto, Inc. would be held liable. Appendix, pp. 48–50. Therefore, Mr. Santiago Nieves filed a motion in which he acknowledged that the action on wrongful dismissal could only be directed against his employer Braulio Agosto, Inc. However, he clarified that, in accordance with the text of Act No. 115-1991, *infra,* the agents of the employer could be held responsible in their personal capacity for acts of retaliation. In addition, he argued that Ms. Agosto Flores and Mr. Agosto Vega caused him damage, therefore Art. 1802 of the Civil Code, *supra,* applies. Appendix, pp.53–55.

Instead, the respondents responded and referred to several judgments of the Court of Appeals and the United States District Court for the District of Puerto Rico (Federal District Court) in which it was interpreted that Act No. 115-1991, *infra,* does not provide for a cause of personal action against the agents, officers or supervisors of an employer. They argued that the inclusion of agents in the definition of "employer" contained in said law was for the purpose of imposing responsibility on the employer for the acts of its agents. The respondents *375 stated that the claim under Article 1802 of the Civil Code, *supra*, was unfounded, since the complaint did not allege unlawful actions independent of the dismissal. Appendix, pp. 58–63.

*Certified translation from the original text in Spanish into the target language English. Done on 19/DEC/2019 by Veronique C. Haesebrouck – Certified Translator – 787-238-8781*

WESTLAW © 2019 Thomson Reuters. No claim to original U.S. Government Works. 3

Subsequently, Mr. Santiago Nieves lodged a rejoinder in which, in addition to reiterating his arguments, he also referred to several decisions of the Court of Appeals and the Federal District Court which conceived that Act No. 115-1991, *infra,* did contemplate a personal action against the agents of a "employer."

On October 9, 2013, the Court of First Instance notified a partial judgment in which it accepted the respondents' considerations and, consequently, dismissed the action for wrongful dismissal, retaliation and damages against Ms. Agosto Flores and Mr. Agosto Vega in their individual capacity. Appendix, pp. 69–70.

Disagreeing, Mr. Santiago Nieves appealed to the Court of Appeals. There, he reiterated his arguments as to the merits of the cause of action under Act No. 115-1991, *infra,* and Art. 1802 of the Civil Code, *supra,* against Mrs. Agosto Flores and Mr. Agosto Vega in their individual capacity. On the other hand, the respondents lodged their opposition.

On March 17, 2014, the Court of Appeal upheld the opinion of the primary forum. The intermediate appeal forum understood that the inclusion of the word "agent" in the definition of "employer" provided by Act No. 115-1991, *infra,* does not have the effect of imposing individual responsibility on the agents of the employer. Moreover, it ruled that where there is a special labor law in the context of the requested remedy, such as Act No. 115-1991, *infra,* in the case of retaliation, the use of other remedies provided in other general provisions such as those referred to in Art. 1802 of the Civil Code, *supra,* does not proceed. As a result, it concluded that the primary forum did not err in dismissing both the cause of action brought under **\*376** Art. 1802 of the Civil Code, *supra,* as the cause of action for retaliation against Ms. Agosto Flores and Mr. Agosto Vega in their personal character. Appendix, pp. 89–110.

Unsatisfied, on April 16, 2014, Mr. Santiago Nieves appealed to us. He reiterated that the Court of Appeal erred in concluding that Act No. 115-1991, *infra,* does not include a case of action against the agents of an employer and in dismissing the cause of action under Art. 1802 of the Civil Code, *supra.* We issued the order of *certiorari* and after the appearance of both parties, the case was submitted for award on the merits.

## II

The origin of Act No. 115-1991 (29 LPRA sec. 194 *et seq.*) is anchored in the notion developed during the decade of the 1980s that in Puerto Rico, a statute that specifically limited the employer's ability to fire employees for participating in investigative processes of a governmental nature was necessary. See J.L. Sanabria Montañez, *Labor Law,*83 Rev. Jur. UPR 699 (2014). That is why legislation was introduced to provide that any employee who was dismissed, threatened or discriminated in his/her workplace for offering testimony before a legislative, administrative or judicial forum had at his/her disposal a cause of action against his/her employer. Report on the Senate Bill 987 of the Legal, Labor, Veterans Affairs and Human Resources Commissions of June 22, 1991, 5th Ordinary Session, 11th Legislative Assembly, p. 2. In addition, the proposed legislation sought to create a civil and criminal action in favor of the employee, develop remedies that the employee could claim and delimit the employer's responsibility. Id., p. 3.

With regard to the actions set out in the new legislation, the Report on the Senate Bill 987 of the **\*377** Legal, Labor, Veterans Affairs and Human Resources Commissions recognized the following:

> The civil action that creates the measure empowers the employee to be compensated for the actual damages suffered and mental distress, in addition [sic] to the provisions of the current law. With regard to the item of unearned wages, *the liability of the employer* shall be twice the amount determined to have caused the violation of the law. In addition to the civil action created, any violation of the provisions of this law is classified as a serious crime. Both actions provide effective protection for workers' rights. [...] (Emphasis added). Id., p. 4.

*Certified translation from the original text in Spanish into the target language English.*
*Done on 19/DEC/2019 by Veronique C. Haesebrouck – Certified Translator – 787-238-8781*

WESTLAW   © 2019 Thomson Reuters. No claim to original U.S. Government Works.   4

**[1]** After being unanimously approved by the House of Representatives and the Senate of Puerto Rico, the measure became Act No. 115-1991, *supra.* The wording of Article 2(a) (29 LPRA sec. 194a(a) (ed. 2009)) provided:

> *No employer may* fire, threaten, or discriminate against an employee with respect to the terms, conditions, compensation, location, benefits or privileges of employment because the employee offers or attempts to offer, verbally or in writing, any testimony, expression or information before a legislative, administrative or judicial forum in Puerto Rico, when such expressions are not of a defamatory nature nor constitute disclosure of privileged information established by law. (Emphasis added).

**[2]** At the same time, in paragraph (b) of the same article, 29 LPRA sec. 194a(b) (ed. 2009), it was recognized that

> [a]ny person alleging a violation of [this law] may bring a *civil action against the employer* within three (3) years of the date on which such violation occurred and *seek compensation for the actual damage suffered, mental distress, restitution in foregone wage, benefits* and attorney's fees. The *liability of the employer* for damages and unearned wages shall be twice the amount determined to have caused the violation of the provisions of said sections. (Emphasis added).

**[3–4]** As a result, in our legal system it was outlawed for an employer to retaliate **\*378** against an employee who provided information in a legislative, judicial or administrative process. In other words, the employer had the obligation to refrain from engaging in statutory unlawful acts. In addition, it was established that the corresponding legal action to obtain the remedies provided is brought against the employer. For these purposes, it was legislated that the term *employer* "means any person who has one or more employees" and "includes the employer's agents". Art. 1(b) of Act No. 115-1991 (29 LPRA sec. 194 (ed. 2009)). Subsequently, through Act No. 169-2014, the Legislative Assembly amended the definition of employer in Art. 1(b) of Act No. 115-1991 (29 LPRA sec. 194) to provide that *employers* "means all employers equally, whether they be public or private employers, public corporations or any other employer name that exists at present or is believed in the future, all of all natural or legal person of any kind [...] and their agents and supervisors."

In the face of this legal scheme, there is no doubt that an aggrieved employee has a cause of action against his employer, whether he is a natural or legal person, for violations of Act No. 115-1991, *supra.* However, the conduct prohibited by this legislation is often deployed through acts committed by the officers of the employer during the exercise of their duties. Today's controversy requires us to specify the scope of the mention of agents in the definition of "employer" for the purposes of this legislation.

**[5]** Although the legislative record of Act No. 115-1991, *supra,* is copious with respect to the public policy that inspired its adoption, at the same time, it is orphaned of specific expressions that shed light on this question. Despite the foregoing, a comprehensive analysis reveals the true scope of the statute. The structure and content of the retaliation legislation demonstrate that the intention of the Legislative Assembly was not to impose **\*379** individual responsibility on an employer's agents. In other words, the allusion to agents does not create, nor institute, a cause for additional and independent action against them in their individual capacity.

**[6]** On the premise that it is the employer who derives the greatest benefits from the activity of its employees and, in turn, who controls the working environment, laws have been enacted in Puerto Rico that impose civil liability on the employers for the illicit acts of their agents, management employees or supervisors. Act No. 115-1991, *supra,* conforms precisely to that legislative model. The purpose of including in the definition of "employer" of Act No. 115-1991, *supra,* both the employer and its agents was to vicariously hold the employer liable for the actions of its agents. In this way, the possibility that the employers of employees who suffered reprisals could invoke in their defense that it was not they but their agents who committed such acts was thus explicitly eliminated.

*Certified translation from the original text in Spanish into the target language English.*
*Done on 19/DEC/2019 by Veronique C. Haesebrouck – Certified Translator – 787-238-8781*

WESTLAW  © 2019 Thomson Reuters. No claim to original U.S. Government Works.      5

Different from two of the laws analyzed by this Court in *Rosario Toledo v. Dist. Kikuet, Inc.* , 151 DPR 634 (2000), Act No. 115-1991, *supra,* does not contain a provision from which the legislative intent to hold an employer's agents personally liable may be derived. On that occasion, in interpreting Act No. 100 of June 30, 1959 (29 LPRA sec. 146 *et seq.* ) Act No. 69 of July 6, 1985 (29 LPRA sec. 1321 *et seq.* ) and Act No. 17 of April 22, 1988 (29 LPRA sec. 155 *et seq.* ), we determine that the civil liability established therein is not limited to the employer, but that agents also are personally liable for their own actions. *Rosario v. Dist. Kikuet, Inc.* , supra, page. 644.

In the particular case of Act No. 17, *supra,* this Court emphasized that the legislator provided in Art. 11 (29 LPRA sec. 155j)that "any person responsible for sexual harassment in the workplace, as defined in [Articles **\*380** 1 to 13 of] this law, shall incur civil liability". *Rosario v. Dist. Kikuet, Inc.* , supra, p. 645. As a result, as is apparent from the abovementioned provision, civil liability was not limited to the employer but extended to any person responsible for the conduct in question. Id.

Now, with respect to Act No. 69, *supra,* and Act No. 100, *supra,* the Court did not detail counterpart articles to reach that same conclusion. However, Art. 21 of Act No. 69 (29 LPRA sec. 1341) expressly acknowledges that any person, employer or organization that violates its postulates will incur civil and criminal liability.

[7] This shows that when the Legislative Assembly has wanted to extend civil liability beyond the employer, it has expressly provided for it. The language used in the retaliation law differs from other labor laws in which the legislator created a cause of action against anyone who engages in proscribed conduct and not just against the employer.

[8] In this sense we find a contrast in public policy by comparing the scheme and the distinctive purposes that embody the law of retaliation with those of the law to prohibit sexual harassment in the workplace. Retaliation itself does not constitute an act by which an agent who has no power over the aggrieved employee's employment situation may be held liable under Act No. 115-1991, *supra.* According to this statute, retaliation consists of dismissal, discrimination and threat in relation to terms and conditions of employment. In this sense, when the agent of an employer fires, discriminates or threatens a fellow employee with respect to the compensation, benefits or privileges of his position, what he exercises is the authority of the employer. Let us remember that ultimately it is the employer who has the power to decide the employment status of an employee. **\*381**

Different is the situation in sexual harassment scenarios. In that case, an agent, as well as anybody else in the workplace, has the ability to sexually harass other employees regardless of the powers or functions held by him. This is why the Legislative Assembly established a different model at the time of imposing civil liability in Act No. 17 *supra,* and Act No. 115-1991, *supra.* Thus, by prescribing those who incur civil liability for sexual harassment, according to Act No. 17, *supra,* "everyone" was appointed, while in Act No. 115-1991, *supra,* retaliation referred to "all employers". The latter law does not recognize an additional and independent cause of action against the agent of an employer.


### III

Although not in itself decisive, the federal treatment of *Title VII of the Civil Rights Act* of 1964, 42 USC secs. 2000e-2000e-17, and the *Age Discrimination in Employment Act* 1967 (ADEA), 29 USC secs. 621–634, influences our reasoning. Despite the difference between these federal laws and Act No. 115-1991, *supra,* the interpretation given to the former is illustrative to interpret the latter. They all share the same drafting structure when defining the term "employer" and the issue of imposing civil liability on the employer's agents in their personal capacity has been the subject of extensive discucion.

The Title VII definition of employer, virtually identical in the ADEA, provides that this is "a person engaged in an industry that affects trade and has fifteen or more employees ..., as well as any agent of that person ...". 42 USC sec. 2000e(b). [2] **\*382**

*Certified translation from the original text in Spanish into the target language English.*
*Done on 19/DEC/2019 by Veronique C. Haesebrouck – Certified Translator – 787-238-8781*

WESTLAW © 2019 Thomson Reuters. No claim to original U.S. Government Works. 6

A growing majority of federal courts have interpreted the inclusion of agents in the definition of employer as a reference to the doctrine of vicarious responsibility, inserted in the law to ensure that the acts of individual employees are attributable to the employer. H.P. Ting, *Who's the Boss: Personal Liability under Title VII and the ADEA*, 5 Cornell J.L. & Pub. Pol'y 515, 522 (1996). In addition, they have argued that laws of a labor nature are not intended to grant remedies to employees against individual persons, but against their employers. Thus, the vast majority of federal appellate courts, which have considered this controversy under Title VII and ADEA, have ruled that it is not appropriate to impose civil liability on agents in their personal capacity. Id. [3]

Consequently, the prevailing view in the federal system is that an offending agent cannot be held liable in his personal capacity under the definition of employer in Title VII. M. Chamallas, *Two Very Different Stories: Vicarious Liability Under Tort and Title VII Law*,75 Ohio St. L.J. 1311, 1331 (2014). This type of legislation is structured to impose liability on employers, who are obligated to ensure the behavior of their employees in general, and not on private individuals. "Id.

These principles were invoked by the petitioners in *Rosario v. Dist. Kikuet, Inc.* , supra, to argue that it was not appropriate to attribute responsibility to them in their individual **\*383** capacity. However, this Court briefly reasoned that because federal law applied exclusively to employers with fifteen or more employees and our legislation was "much more comprehensive", the reasoning of federal decisions was not applicable in our jurisdiction. Id., p. 644 [4]

### IV

The interpretation we adopt is the one that best achieves an integrated, logical and reasonable reading of the legislative piece. In addition, it advances its purposes and public policy with less disruption in the work and business environment of Puerto Rico. With this interpretation, deference is paid to the legislative scheme adopted, after considering its entire context, and ensure that the responsibility contemplated lies with the entity with the true capacity to retaliate. Our workers are also protected when they cooperate with government branches in their research processes **\*384** without the fear that their employer, by itself or through any of its agents, will take action against them. In that case, the employer, as a subject with full control over the employment situation of the employee, will be liable according to the law for the conduct of his agents.

Likewise, this reading of the statute does not undermine the current corporate scheme. It is well known that in our legal system a corporation has its own legal personality and its own patrimony. "The fact that the corporation as a legal entity can only act through natural people merely explains a reality." *Sucn. Santaella v. Srio. De Hacienda.* 96 DPR 442, 451 (1968). It has been widely recognized that this legal characteristic presented by corporative bodies contributes greatly to the development of a strong economy. See K.W. Dam, *Equity Markets, the Corporation, and Economic Development,* John M. Olin Program in Law and Economics Working Paper No. 280, 2d Series (2006). Recognizing a cause of action directly on agents for the acts of a corporation would tear apart the separate legal personality as granted by the General Law on Corporations 2009 (14 LPRA sec. 3501 et *seq.* ) to corporate entities and would add major obstacles to Puerto Rico's economic development.

**[9]** Finally, after examining the provisions, intention and legislative process of Act No. 115-1991, *supra,* we conclude that it allows an aggrieved employee to file an action against his employer, for retaliation by him or his agents, but does not provide an independent cause of action against the agent who executed the acts. The inclusion of agents in the definition of "employer" is to recognize only the imposition of vicarious liability on the employer. **\*385**

*Certified translation from the original text in Spanish into the target language English.*
*Done on 19/DEC/2019 by Veronique C. Haesebrouck – Certified Translator – 787-238-8781*

WESTLAW  © 2019 Thomson Reuters. No claim to original U.S. Government Works.  7

Santiago Nieves V. Braulio Agosto Motors, 197 D.P.R. 369 (2017)
2017 TSPR 24

### V

It remains for us to assess whether there us any other general provision that impose personal civil liability on the employer's agents.

**[10]** In *SLG Pagán-Renta v. Walgreens,* 190 DPR 251, 260 (2014), we had the opportunity to clarify that "as a general rule, *in the face of conduct of an employer, provided for and sanctioned by special legislation of a labor nature,* the employee shall have the right to the remedy provided by such law, without having recourse to Article 1802 of the Civil Code%7D ". (Emphasis on the original suppressed and Emphasis added). See *Santini Rivera v. Serv Air, Inc.* , 137 DPR 1, 16 (1994). On the other hand, we recognize that the exclusivity of remedies in these statutes " 'does not exclude the civil liability of an employer for unlawful conduct that he incurs for reasons other than the mere violation of a provision of labor laws%7D." *Soc. de Gananciales v. Royal Bank de P.R.,* 145 DPR 178, 193 (1998), citing *Rivera v. Security Nat. Life Ins. Co.* , 106 DPR 517, 527 (1977).

Such pronouncements are based on the principle of avoiding double compensation when a labor law grants the employee a remedy to his grievance. This limitation applies when an employee claims both special and general remedies for violation of a provision of an employment nature. However, we must be precise in the relationship between the remedies established in the special labor laws and the general remedy provided in Art. 1802 of the Civil Code, *supra.*

**[11]** Labor laws do not exclude the responsibility that a person may have for independent unlawful conduct not contemplated in the statute, in accordance with Article 1802 of the Civil Code, *supra.* Therefore, if the law of **\*386** labor nature does not provide for and sanction the conduct committed or this constitutes an act of fault or autonomous negligence, in the absence of such special legislation, Art. 1802 of the Civil Code, *supra,* is fully enforceable. That is to say, in that scenario the aggrieved employee may resort to the general provisions of non-contractual civil liability against any person who has violated a legal duty to act, as long as a special law does not prohibit it. Of course, the employee seeking this general remedy for damages must prove each element of his cause of action, including the defendant's wrongful or negligent conduct. [5]

On the other hand, if the labor law sanctions the imputed conduct and confers a remedy on the aggrieved employee, we will not "accept the thesis that the legislator left the door open to the use of some other remedy or cause of action, provided by some general law". (Emphasis suppressed). *SLG Pagán-Renta v. Walgreens,* supra, p. 260.

### VI

In this case, the employer of Mr. Santiago Nieves for the purposes of Act No. 115-1991, *supra,* is Braulio Agosto Motors, Inc. That entity would be responsible if the claims brought against it were proven. The legal personality of Braulio Agosto Motors, Inc. remains separate from the legal personality of Mr. Agosto Vega and Ms. Agosto Flores, the main shareholder and president of the corporation, respectively. Consequently, as the lower courts of appeal concluded, the complaint filed against Mr. Agosto Vega and **\*387** Ms. Agosto Flores in their individual capacity, according to Act No. 115-1991, *supra,* does not proceed.

On the other hand, Mr. Santiago Nieves alleged, in short, that he was dismissed from his job without just cause and in retaliation. Thus, Mr. Santiago Nieves based his claim solely on the case that he was dismissed for participating in an investigation by the Treasury Department. Additionally, the allegations he made against the respondents revolve around their participation in the dismissal, such as his supervisors and agents of the Braulio Agosto, Inc. corporation. However, Mr. Santiago Nieves did not allege any independent action to the dismissal by which the employer's agents may respond under Article 1802 of the Civil Code, *supra.* In view of the foregoing, we find no justification for keeping them in this lawsuit and, therefore, it is appropriate to dismiss the claims against them, as the lower forums correctly decreed.

Certified translation from the original text in Spanish into the target language English.
Done on 19/DEC/2019 by Veronique C. Haesebrouck – Certified Translator – 787-238-8781

WESTLAW  © 2019 Thomson Reuters. No claim to original U.S. Government Works.

## VII

On these grounds, *the judgment of the Court of Appeal is upheld.*

Presiding Judge Oronoz Rodríguez issued an agreeing opinion in part and dissenting opinion in part, which was joined by Associate Judge Rodríguez Rodríguez. Associate Judge Rivera García dissented and concurred with a written opinion. Associate Judge Estrella Martinez dissented with a written opinion.

## --O--

Partly concurrent and partly dissenting opinion issued by Judge President Oronoz Rodríguez, joined by Associate Judge Mrs. Rodríguez Rodríguez. **\*388**

After careful consideration of the majority rule of this Court and its respective effects, I am compelled to dissent.[1] I consider that in view of the legislative uncertainty presented by Act No. 115-1991 (29 LPRA sec. 194 *et seq.* ), the Court is called upon to exercise an interpretative function which will provide greater coherence, instead of dissonance, to the labor legislation in force.

## I

As can be seen from both the majority opinion and the dissenting opinions, there is a legitimate controversy regarding how labor laws — in this case Act No. 115-1991 — define "employer" for the purposes, on the one hand, of who may engage in legally proscribed conduct and, on the other, who must be civilly liable for such conduct. As far as Act No. 115-1991, the majority opinion concludes that, since "employer" is referred to in the articles that provide a cause of action to the aggrieved party, it is only appropriate to impose vicarious liability on the formal employer, rather than on an agent in his personal capacity.[2] However, it suggests, in turn, that the legislator, in other labor laws, imposed liability on both the employer and the person who engages in the **\*389** proscribed conduct, given that counterpart articles allude to "any person".[3]

Although I recognize that the analysis presented by a majority of this Curia is legally plausible, I find two core problems with its reasoning. First, the definition of *employer* in Act No. 115-1991 is extremely comprehensive, including the agents and *supervisors* of the employer.[4] In that sense, even in cases where the "employer" is referred to at the time of establishing civil liability, the very definition of the law gives room to conclude that not only the employer, but also its agents and supervisors can be held liable. From that perspective, I do not think it appropriate to exclude from liability persons who engage in the conduct prohibited by the Legislature, especially since this Court has established that it is appropriate to resolve doubts in labor matters in favor of the employee and in favor of the greatest possible guarantee of his right. See: *Romero  et als. v. Cabrer Roig et als.* , 191 DPR 643, 653 (2014); *Lamb  Jimenez  v. UPR*, 188 DPR  129, 139 (2013).

Second, it is questionable whether, when attempting to eradicate certain conduct from the work environment, the legislature considers it sufficiently dissuasive to impose liability only on the employer , thereby relieving the person who actually engaged in the conduct from the **\*390** effects of the law. *Rosario  Toledo  v. Dist. Kikuet, Inc.* , 151 DPR 634, 644–645  (2000). It would be even stranger to conclude that the legislator wanted to do so in some laws, but not in others, when as a whole they are legislative efforts to guarantee greater rights to employees and to discourage certain illegitimate or reprehensible practices in the workplace. For that reason, when analyzing these laws, I would opt for an approach that is not only based on the text of the law, but also fully fulfills the eminently social purposes that inspired it. *Lamb  Jimenez  v. UPR*, 188  DPR 129, 138 (2013); *Irizarry  v. J & J Const. Prods. Co., Inc.* , 150 DPR 155, 164  (2000).

*Certified translation from the original text in Spanish into the target language English.*
*Done on 19/DEC/2019 by Veronique C. Haesebrouck – Certified Translator – 787-238-8781*

## II

After a careful analysis of the provisions of Act No. 115-1991, and in order to ensure the objectives of laws of this nature, I consider that both the formal employer of an employee and the specific person who incurs retaliation can and should be held liable for the damage caused to the aggrieved party. A majority of this Court takes the opposite view and in so doing causes a regulatory inconsistency to the detriment of those employees who seek to remedy the violation of their rights.[5] I am not satisfied with this course of action, and therefore I dissent. **\*391**

## --O--

Dissenting and concurring opinion of Associate Judge Rivera García.

Today the majority of the Court wrongly rules that Act No. 115-1991, *infra,* does not impose personal responsibility on an employer's agents. The majority view understands that the objective of the law is to provide that employees aggrieved by the outlawed conduct of their employer have a sole cause of action against the employer. Thus, the definition of "employer" does not extend to create a cause of action against supervisors, officers, administrators and agents so they do not respond in their personal capacity. By understanding that this course of action is contrary to the rule of law, *I respectfully disagree with the majority opinion.* In my opinion, Act No. 115-1991 does establish an individual cause of action against agents of a company who engage in acts of retaliation against an employee. Consequently, I understand that the remedies provided in this law are enforceable to any supervisor, officer, administrator and agent of a company for acts performed by them, as well as against the actual employer of the affected employee. Accordingly, and in disagreement with the Majority, I proceed to present a brief summary of the facts of the present case, as alleged by the parties.

## I

Mr. Héctor Santiago Nieves (Mr. Santiago Nieves) began working as General Manager and Consultant of Braulio Agosto Motors, Inc. on January 1, 2011. At the beginning of 2012, the Internal Revenue Area of the Tax Audit Division of the Treasury Department (Department **\*392** of the Treasury) audited Braulio Agosto Motors, Inc. in relation to its actions regarding the Sales and Use Tax (IVU) for the period from January to December 2009. During this investigative process, Mr. Santiago Nieves was the person in charge of producing the documents and information that the Treasury Department requested.

On May 30, 2012, the Treasury Department notified Braulio Agosto Motors, Inc. of a preliminary report in which it charged Braulio with failing to request and retain a copy of the exemption certificate, or other documentation evidencing the right to exemption from the IVU, as well as failing to remit the aforementioned tax.[1] According to Mr. Santiago Nieves, the preliminary report noted that Braulio Agosto Motors, Inc. could face fines ascending to $373,092.40, as a result of the deficiencies found. The Treasury Department granted the company five days to make any allegations regarding the preliminary report.[2]

In response, Mr. Santiago Nieves coordinated several meetings with the accountants of Braulio Agosto Motors, Inc. to analyze the content of the preliminary report and establish an action plan. He also suggested scheduling meetings with representatives of the Treasury Department to discuss the findings of the investigation and provide them with the necessary information to enable the agency to reduce amount of the penalties imposed.

On June 21, 2012, Mr. Braulio Agosto Vega and Ms. Norma Agosto Flores, owner and then President of Braulio Agosto Motors, Inc., respectively, (together, the respondents) called a meeting with Mr. Santiago Nieves. The latter argues that, during the meeting, the respondents accused him of mishandling **\*393** the proceedings before the Treasury Department. He also argues that they reprimanded him by stating that the process would cost them a lot of money and that he would have to assume the responsibility and consequences of the audit.[3] For their part, the respondents argue that the purpose of the meeting was to discuss Mr. Santiago Nieves' poor performance as General Manager of Braulio Agosto Motors, Inc.[4]

*Certified translation from the original text in Spanish into the target language English.*
*Done on 19/DEC/2019 by Veronique C. Haesebrouck – Certified Translator – 787-238-8781*
WESTLAW © 2019 Thomson Reuters. No claim to original U.S. Government Works. 10

Four days later, specifically on June 25, 2012, Mrs. Agosto Flores invited Mr. Santiago Nieves to her office. He claims that, once there, Mrs. Agosto Flores referred to the meeting of June 21, 2012 and then informed him that Mr. Agosto Vega had decided to relieve him of his duties. As a result, she handed him a letter of dismissal, effective immediately. [5]

On December 11, 2012, Mr. Santiago Nieves filed a lawsuit against Braulio Agosto Motors, Inc. and the respondents, among others, for unjustified dismissal, retaliation and damages. [6] In short, he claimed that his dismissal was unjustified and in retaliation for having cooperated with the Treasury Department's investigation. For this reason, he claimed payment of an indemnity of $20,247.99, according to the remedy provided in Act No. 80 of May 30, 1976, [7] compensation for the damages suffered including unearned wages and benefits, as well as reinstatement in employment, as provided for by Act No. 115-1991, [8] known as the Employer's Retaliation Action Act, in addition to requesting compensation of *394 $300,000 under Arts. 1802 and 1803 of the Civil Code. [9]

In their response to the complaint, [10] respondents argued that Mr. Santiago Nieves did not cooperate with the investigation conducted by the Treasury Department, but merely provided the documentation and information required during the audit. This, in the exercise of his duties as General Manager of Braulio Agosto Motors, Inc. They added that this work was done jointly with Ms. Joseline Alvarez, Accounting Manager of Braulio Agosto Motors, Inc., and that, at the time of the reply to the claim, she was still working for the company. They also explained that the Department of Finance had not made any notification of deficiencies or imposed any penalty on Braulio Agosto Motors, Inc. Finally, they argued that the issues discussed at the meeting of June 21, 2012 were related to the poor performance and executions of Mr. Santiago Nieves. They concluded that their dismissal was not in retaliation or in contravention of Act No. 80 *supra*. [11]

Thus, and after several procedural proceedings, on April 23, 2013, the Court of First Instance ordered Mr. Santiago Nieves to explain why he sued Mrs. Agosto Flores and Mr. Vega Agosto in their personal basis. [12] The primary forum questioned whether it would be his former employer, Braulio Agosto Motors, Inc., who should answer *395 if it was proven that his dismissal was unjustified. [13]

In compliance with that order, Mr. Santiago Nieves filed a motion [14] allaying the fact that his claim under Act. No. 80, *supra*, could only be directed against its former employer, Braulio Agosto Motors, Inc. However, he argued that the definition of "employer" provided in Act No. 115-1991 includes its agents. It was therefore reasoned that this meant that agents of an employer who retaliate against the employees of the company they represent, may be sued in their personal capacity. In addition, he stated that the alleged tortious conduct of the respondents caused him damage that entitled him to the remedies provided by Article 1802, *supra,* because they were independent of the cause of action under the cited labor laws.

For their part, the respondents filed a reply to Mr. Santiago Nieves' motion in compliance with the order [15,] in which they argued that the remedies provided for in Act No. 115-1991 are enforceable only to the employee's employer and not against the supervisors, officers, agents or representatives of the employer, in their individual capacity. It acknowledged that the controversy had not been addressed by this Court, and therefore supported its conclusion in several judgments of the Court of Appeals and the Federal Tribunal for the District of Puerto Rico that ruled that Act No. 115-1991 does not provide a cause of action against the officers of the employer. They concluded that this statute does not impose direct liability on the agents but seeks to hold the employers liable for the discriminatory actions of the representatives of *396. With regard to the claim under Article 1802 *supra,* they added that it was inappropriate since Mr. Santiago Nieves filed his complaint based solely on the alleged retaliatory dismissal. They explained that in the absence of allegations of acts of misconduct independent of dismissal, the respondents should be excluded as defendants.

*Certified translation from the original text in Spanish into the target language English.*
*Done on 19/DEC/2019 by Veronique C. Haesebrouck – Certified Translator – 787-238-8781*

Before the arguments of the respondents, Mr. Santiago Nieves presented a rejoinder [16] in which he emphasized that there were discrepancies between the determinations of different panels of the Court of Appeals. In the same way, he pointed out that there were disagreements between different judgments of the Federal Court for the District of Puerto Rico regarding the controversy at hand. By way of example, he cited a number of judgments from both judicial forums in which it was decreed that it was appropriate to impose persona liability on the agents of an employer who violated the provisions of Act No. 115-1991.

The Court of First Instance upheld the respondents' claims and, on October 9, 2013, notified a partial judgment dismissing with prejudice the claim of unjustified dismissal, retaliation and damages against Ms. Agosto Flores and Mr. Agosto Vega in their personal capacity. [17]

On November 7, 2013, Mr. Santiago Nieves filed an appeal with the Court of Appeals. [18] In their respective briefs, both parties reiterated the positions so far described as to the claims for a cause of action under Act No. 115-1991 and Article 1802 of the Civil Code, *supra,* against Ms. Agosto Flores and Mr. Agosto Vega, in their individual capacity.

By judgment notified on March 17, 2014, the intermediate appellate forum upheld the contested opinion **\*397**. [19] As it explained, Act No. 115-1991 provides that an action in retaliation should be brought only against the employer. It reasoned that retaliation against an employee occurs in the discharge of the duties of any employee, manager, agent or representative of the employer and in the interest of the employer. Therefore, it concluded that the cause of action under Act No. 115-1991 does not extend to the agents or representatives of the employer in their personal capacity.

In the same way, it declared inadmissible the claim for damages under Art. 1802 of the Civil Code, *supra.* It concluded that where there is a special labor-type law in the context of the requested remedy, in that case Act No. 115-1991, the use of the remedies provided in other general provisions, such as those contemplated in Article1802 of the Civil Code, *supra,* is not appropriate.

Disagreeing with the ruling, on April 16, 2014, Mr. Santiago Nieves went before this Curia [20] and argued that the Court of Appeal made two errors. First, it erred in concluding that the remedies provided for in Act No. 115-1991 are not opposable to the agents or representatives of the employer in their personal capacity. Second, that it was an error to dismiss the cause of action for damages under Article 1802 of the Civil Code, *supra.*

The appeal having been granted, both parties have submitted their respective pleadings. So, we proceed to elaborate the legal framework applicable to the disputes outlined.


## II

A. When interpreting a piece of legislation, if language is clear and unambiguous, the text of the **\*398** law is the quintessential expression of the legislator's intention. [21] If the letter of the law is clear, it must not be belittled under the pretext of fulfilling his spirit. [22] On the other hand, if any ambiguity arises in the text of the statute, the court must auscultate, ascertain, specify and determine what the legislative will has been. [23] Thus, it must ensure that the interpretation complies with the legislative purposes and attributes a meaning which ensures the result originally sought. [24] Similarly, we cannot lose sight of the fact that the interpretation and application of any statute must be made in communion with the social purpose which inspires it, without disassociated it from reality and from the human problem which it seeks to solve. [25] The fundamental obligation of the courts, in interpreting a law, is to attain the effectiveness of legislative intent. [26]

*Certified translation from the original text in Spanish into the target language English.*
*Done on 19/DEC/2019 by Veronique C. Haesebrouck – Certified Translator – 787-238-8781*

Moreover, the Court has reiterated that labor laws are remedial in nature and have an eminently social and remedial purpose. [27] They serve as a protective instrument of the working class against the discriminatory acts of employers in the workplace . This type of legislation needs to be interpreted liberally, resolving any doubts in favor of those it seeks to protect. [28] **399**

B. By passing Act No. 115-1991, the Legislative Assembly enacted, as a public policy of the Government of Puerto Rico, the protection of employees from retaliation that an employer may take against them for providing testimony, expressions or information before a judicial, legislative or administrative forum, to collaborate with these forums. [29] This statute protects workers who, after carrying out one of the protected activities, are dismissed, threatened or discriminated against with regard to the terms, conditions, compensation, location, benefits or privileges of their employment. [30]

As a remedy to the actions of an employer who engages in any of the prohibited conduct, the employee may appeal a civil action against that employer within three years of the date when the violation occurred. [31] It also provides that the affected employee may seek compensation for actual damages suffered, mental anguish, reinstatement in employment, unearned wages, benefits and collection of attorney's fees. In addition, it provides that the liability of the employer in relation to damages and unearned wages shall be twice the amount determined to have caused the violation of the provisions of this law. [32]

In its interest to provide the greatest possible protection for workers, the legislator determined that "*criminal liability would be* imposed *on employers who participate in the decision to fire* an employee for [that] having testified before the various investigative forums. (Emphasis added). [33] Conversely, Art. 4 of the statute states that:

*400

Any employer who violates any of the provisions of Secs. 194 et seq. of this title shall be guilty of a felony and shall be liable to a fine of not less than one thousand dollars ($1,000) and not more than five thousand dollars ($5,000) *and/or to imprisonment* for a fixed term of three (3) years. If there are aggravating circumstances, the established fixed penalty may be increased to a maximum of five (5) years; if there are extenuating circumstances, it may be reduced to a minimum of two (2) years. (Emphasis added). [34]

It follows that the express intention of the legislator was that proscribed prohibitions and remedies should be enforceable against the "employer" of the injured worker. To clarify to whom the term employer refers, Art. 2 of Law No. 115-1991, as in force at the time of the facts of the present case, defined employer as: "*any person* who has one or more employees. Includes the employer's agents". (Emphasis added). [35]

In the case of *Rosario Toledo v. Dist. Kikuet, Inc.* , 151 DPR 634 (2000), we had the opportunity to analyze the definition of employer provided in several statutes related to labor laws. [36] After analyzing the text of the provisions of the law relating to the concept of "employer", we decide that the supervisors, officers, administrators and agents of an employer are personally responsible, in addition to the actual employer, for their own acts of sexual harassment in the workplace. In this sense, we extended the definition of "employer" to a person who was a real employer and at the same time the direct author of the impeached conduct is responsible for the acts outlawed.

Certainly, the Rosary *v. Dist. Kikuet, Inc.* , above, occurs in the context of a situation of discrimination on the basis of sex and sexual harassment and not in the context of **401** retaliation, as in the present case. However, in the dispute before us, as in the case cited, the direct author of the employer's conduct that caused the dismissal for retaliation was deployed by the same person. That is, by the actual employer and also by the direct agent or supervisor of Mr. Santiago Nieves, both with the same power and control of an employer. As I mentioned, in order to reach this conclusion, we analyzed the definition of employer provided in each of the mentions of the statutes and which we outline below.

WESTLAW   © 2019 Thomson Reuters. No claim to original U.S. Government Works.   13

Santiago Nieves V. Braulio Agosto Motors, 197 D.P.R. 369 (2017)
2017 TSPR 24

Article 2(2) of Act No. 17 (29 LPRA sec. 155a(2)) (sexual harassment in the workplace) defines *employers* as

> [...] *any natural or legal person* of any kind, the Government of the Commonwealth of Puerto Rico, including each of its three Branches and its instrumentalities or public corporations, municipal governments and any of its municipal instrumentalities or corporations, which for profit or without it, employs personnel through any kind of compensation *and their agents and supervisors.* [...] (Emphasis added).

For its part, Article 2(2) of Act No. 69 (29 LPRA sec. 1322(2)) (sexual harassment in employment) provides that *employer*

> [] includes *any natural or legal person* employing workers, laborers or employees, *as well the chief, officer, agent, official, manager, administrator, superintendent, foreman, servant or representative* of such natural or legal *person.* (Emphasis added).

Finally, Art. 6(2) of Act No. 100 (29 LPRA sec. 151(2)) (discrimination in the workplace) provides a very similar definition of employer, providing that:

> []n includes *any natural or legal person* employing workers, workers or employees, *as well as the chief, officer, agent, official, adviser, manager, administrator, superintendent, foreman, servant, agent or representative of such natural or legal person.* [...] (Emphasis added). **\*402**

Based on the transcribed definitions, in *Rosario v. Dist. Kikuet, Inc.* supra, p. 643, we stated that the provisions of the law discussed were clear and unambiguous, since they included "supervisors, officers, administrators and agents of [them], and invoke the unequivocal intention of the Legislative Assembly to hold them accountable for acts of sexual harassment in employment when such acts [were] committed by [them].

In that context, it is necessary to conclude that the language and the definition that Law No. 115-1991 gives, like the aforementioned labor laws, to the term "employer" is not limited to the real employer or owner of the company, but extends to its agents and any person responsible for the conduct in question, without distinction of any kind. [37] As we observed previously, the definition of employer in this, as in force at the time of the events, directed its prohibition to the employers, but later clarified that this term "includes the agents of the employer. [38]

### III

Regarding Mr. Santiago Nieves' claim as to the liability of the respondents under Art. 1802 of the Civil Code, *supra*, I must point out that in multiple instances this Court has refused to recognize compensatory remedies, beyond those expressly provided in labor laws.

For example, in *Rivera v. Security Nat. Life Ins. Co.* 106 DPR 517 (1977), in the context of an employee whose right not to be penalized in employment for organizing to improve his working conditions was violated, we resolved that no civil liability could be imposed on an employer who violates the provisions of the Secs. 7 and 8 of the **\*403** Federal *Labor Relations Act of 1947*, without proof that it engaged in tortious acts beyond the act of dismissal. [39]

Certified translation from the original text in Spanish into the target language English.
Done on 19/DEC/2019 by Veronique C. Haesebrouck – Certified Translator – 787-238-8781

Subsequently, and on the basis of that determination, in *Porto and Siurano v. Bentley P.R., Inc.* 132 DPR 331 (1986), we reiterate the cited norm and explain that a worker or laborer hired for an indeterminate period of time who is dismissed without just cause is only entitled to the exclusive remedy provided by Law No. 80.

Based on the two cases outlined above, in the recent opinion of *SLG Pagán-Renta v. Walgreens*, 190 DPR 251 (2014), we insist that the interpretation of matters relating to remedies sought under a special labor or worker-employer law must be restrictive. Consequently, we maintained this Court's position of rejecting the proposition that the legislator left the door open to the use of some other remedy or cause of action, provided by some general law. [40]

**IV**

In agreement with the above regulations, the first controversy requires analyzing and determining whether the term employer, as defined in Law No. 115-1991, includes its agents, supervisors and representatives. This is the case when it is alleged and subsequently proven that they engaged in the acts of reprisal defined in that statute.

As I mentioned, this discussion has been the subject of the attention of several panels of the Court of Appeals. In some instances, this appellate forum has refused to recognize a personal action against employers' agents. **\*404** In these cases, he has reasoned that the text of the law does not give rise to a personal cause of action against the agents of a company for acts of retaliation taken against a worker. [41] While in other instances, different panels have used the case of *Rosario v. Dist. Kikuet, Inc.* and have emphasized that the definition of employer in Law No. 115-1991 includes agents. Consequently, they have ruled that the law against retaliation does permit a cause of action against an officer or agent of the employer in his or her personal capacity. [42] As a result, we find a variety of opinions lacking uniformity.

This same fate has been faced by the Federal Court's determinations for the District of Puerto Rico around the dispute raised. In some instances this Forum has cited ours expressions in different opinions on labor law [43] as an example of this Court's tendency to interpret employer labor laws liberally in favor of employees. Accordingly, they have concluded that Act No. 115-1991 provides a cause of personal action against a supervisor who retaliates against an employee of the company for which he works. [44] While other opinions, by making a more restrictive analysis, have concluded that this Act No. 115-1991 does not provide for a cause of personal action against the employees of the employer. [45] **\*405**

Mr. Santiago Nieves requests that in order to answer the question we face, we should use as a frame of reference this Court's determination in *Rosario v. Dist. Kikuet, Inc.* , supra. As I previously reviewed, in that case we express that laws prohibiting sexual harassment, gender discrimination and workplace discrimination specify that a company's supervisors, officers, administrators and agents were included in the definition of employer that they provide. [46] We concluded that this fact represented the unequivocal intention of the legislator to impose personal liability on the agents of an employer who engage in acts of sexual harassment. Note that the definition in Act No. 115-1991, as in force at the time of the facts before us, includes the agents as part of its definition.

The Majority Opinion erroneously points out that such mention is a reflection of the legislative intention to impose vicarious liability on employers for the actions of their agents. I understand that like the precepts analyzed in *Rosario v. Dist. Kikuet, Inc.* supra, this definition establishes an individual cause of action against company officials who have engaged in acts of retaliation against an employee.

The legislative history of Law No. 115-1991 lacks a discussion that directly addresses the controversy before us. However, after an analysis of this I find no indication that the legislator had intended to exclude the employer's agents from the civil liability legislated for acts of retaliation. On the contrary, there is a clear intention to maximize the scope of protection for employees who are victims of retaliation. Thus, the Statement of Motives of the statute under discussion enshrines the urgency

Certified translation from the original text in Spanish into the target language English.
Done on 19/DEC/2019 by Veronique C. Haesebrouck – Certified Translator – 787-238-8781

WESTLAW   © 2019 Thomson Reuters. No claim to original U.S. Government Works.

of granting additional remedies to those previously available, including compensation for actual and **406** emotional damages and attorney's fees. In addition, as we have already seen, acts of retaliation were criminalized by imposing criminal liability on employers who participated in the decision to fire an employee exercising one of the protected activities. [47]

In addition, the intention to expand the definitions of "employee", "employer" and "person" appears from the reports of the various Committees on The Legal, Labor, Veterans Affairs and Human Resources of the House and The Senate. For example, see the Report of the Senate, the Committees on Legal and Labor and Veterans Affairs and Human Resources of June 22, 1991 on the Senate Bill987, pp. 2–3, where the committees established that these definitions should be expanded in such a way as to understand that the law would be "applicable to any employee, employer or person without distinction of position, corporation or entity".

It is plausible to conclude that the legislator, in making such caveats, intended to hold the direct perpetrator of the acts of retaliation personally liable.

The Legislative Assembly recently passed Act No. 169-2014, in order to amend the definition of employer in Act No. 115-1991 "to clearly establish its scope". [48] Once again, the Legislative Assembly reaffirmed the public policy of high esteem for the protection of workers' rights and extended the scope of the Retaliation Act. The new definition of the statute provides that "Employer":

> means all employers alike, whether these public or private courts, public corporations or any other employer denomination that exists in the present or believes in the future, *any natural or legal person of any kind,* **407** including the Government of the Commonwealth of Puerto Rico, its three Branches and its instrumentalities or public corporations, municipal governments and any of their municipal instrumentalities or corporations, whether for profit or not, employs individuals through any compensation clause and their agents *and supervisors.* [...] (Emphasis added). 29 LPRA sec. 194.

That amendment, although adopted after the facts of the present case, sheds light on the legislative intention to hold the agents of the employer liable in their personal capacity. Faced with the opportunity to amend the definition of employer, the legislator clarified that *employer,* for the purposes of Act No. 115-1991, includes "any natural or legal person of any kind". In addition, instead of eliminating the inclusion of agents, he added the supervisors who represent him. All this is nothing more than a clear and unequivocal expression of the legislator's intention to impose personal liability on the agents of an employer who engages in acts of retaliation.

On the other hand, in *Rosario v. Dist. Kikuet, Inc., supra,* we note that it would be a contradiction to grant immunity to the supervisors, officers, administrators and agents of an employer, i.e. the direct perpetrators of the damage resulting from an act of sexual harassment, and to hold the actual employer or owner of a single company responsible. This is a clear and unequivocal expression of the legislator's intention to reach the same conclusion in the face of the dispute now being dealt with by this Court.

Citizen participation in the research and adjudication processes of legislative, administrative and judicial forums is of obvious and vital importance. By creating a cause of action that punishes acts of retaliation for providing testimony, expression, or information to any of these forums, the legislator sought to foster such collaboration. Therefore, our interpretation of the statute should have the effect of serving as an incentive for workers, vulnerable parties in a worker-employer relationship, to feel protected in case they are compelled or that *motu proprio* they participate **408** of those processes. Similarly, it is imperative to protect those employees who claim any right or protection that our legal order provides them. Today, however, it is another one to proceed.

WESTLAW    © 2019 Thomson Reuters. No claim to original U.S. Government Works.    16

Santiago Nieves V. Braulio Agosto Motors, 197 D.P.R. 369 (2017)
2017 TSPR 24

It is contradictory that the Majority Opinion states that "retaliation itself does not constitute an act [that may be carried out] by an agent who has no power over the employment situation of the aggrieved employee". [49] In this case, however, it is precisely in this case who commits the acts of retaliation that he is the owner of the undertaking himself, a person with exclusive power and control over the workplace situation faced by Mr. Santiago Nieves. That is, who participated *directly* from the outlawed acts was the "employer", the "agent" or the "supervisor", all embodied in the same person. This further reinforces the fact that the language used in the retaliatory law is consonant with the legislator's intention to create a cause of action against the "employer" as a legal person and against any natural person who engages in proscribed conduct.

We cannot ignore the fact that, *in general,* acts of retaliation that Act No. 115-1991 aims to suppress, in most cases, are executed by the supervisors, managers or agents of a company. This is because these are the people who are in greatest contact with the employees of the employers. However, it is no less true that these acts could, as in this *case,* occur in a scenario where "employer" and "agent" are the same person capable of affecting the areas whose power is usually exceeded by the employer as an entity with full control. Accordingly, a Majority of this Court seeks to grant immunity to the latter for acts of retaliation, thereby diminishing the deterred effect that the legislature sought to prevent the conduct of the former. **\*409**

On the other hand, we cannot abstract the remedies provided by Act No. 115-1991. A Majority understands that these may only be claimed from the entity or person who identifies as the actual employer and not from any subject who acts as a direct author of the prohibited acts, this may be the employer himself. However, a reading of the statute in question leads us to a different conclusion. Not only does Act No. 115-1991 provide compensation for actual damages, mental anguish and attorney fees, which are clearly opposable to an individual in his personal capacity, but, as we have already seen, the statute provides for a criminal penalty involving a penalty of detention. [50]

It is absurd to rule that the sentence of detention was included to be imposed on employers as a legal personality. To uphold employers in that capacity, Act No. 115-1991 imposed a fine. This is constituency with the provisions of the Puerto Rico Penal Code regarding penalties for natural persons and penalties for legal persons. [51] It is clear that the intention of the legislature in imposing a penalty of detention which was open only to a natural person was to hold the agents of the employer, the direct author of the acts of retaliation, to be liable in his personal capacity.

I reiterate that, in our jurisdiction, there is a pre-eminent public policy that seeks to eliminate any retaliation against an employee who collaborates with any legislative, administrative or judicial forum, as well as acts of retaliation against the employee that claims any right or protection provided by the law . With this in mind, I understand that, contrary to what a Majority of this Court concludes, in light of the legislative history, the applicable hermeneutics rules and the most recent legislative expression regarding the scope of Law **\*410** No. 115-1991, it does establish a cause for *individual* action against officers of a company who have committed acts of retaliation against an employee. Consequently, the remedies provided in the law are objectionable to *any supervisor, officer, administrator and agent of a company,* for those acts that he has executed, as well as to the actual employer of the employee concerned.

Certainly, personal responsibility must be conditional on the act of retaliation being committed by the employer's agent. The only person with the capacity to hire an employee and keep him on the payroll is the actual employer of a company. Therefore, a dismissal represents an enforceable act only by the employer you hired. Not every agent can be held liable in their personal nature for the dismissal of an employee. That is, a supervisor who merely informs the employer's determination to dismiss an employee in retaliation for any protected activity should not be held liable for such a decision. The agent who participates in the decision to fire an employee for the employee for his or her testimony before any of the outlawed investigative forums will be responsible for his/her personal nature.

I note that the case at hand today has not reached the stage of the trial. However, if it were once demonstrated that the dismissal of Mr. Santiago Nieves was the result of retaliation for his collaboration with the Treasury Department and that the respondents were the persons who participated and made such a decision, the latter should respond in their personal capacity, in accordance with the Act No. 115-1991.

*Certified translation from the original text in Spanish into the target language English.*
*Done on 19/DEC/2019 by Veronique C. Haesebrouck – Certified Translator – 787-238-8781*

Finally, as to the cause of action to the pallium of Art. 1802 of the Civil Code, *above*, for the alleged unlawful acts of the respondents, our order of law provides that, in worker-employer cases, an employee whose workplace rights are violated has no additional remedies at his disposal, nor does the **\*411** employer is exposed to criminal sanctions, beyond sanctions and compensation under special labor laws. This is the extent to which the employee fails to prove an unlawful act, or the employer is charged with any criminalized action , independent of the act of dismissal or discrimination governed by the relevant labor status.

In view of the foregoing, Mr. Santiago Nieves' claim, both in his complaint and in his various appearances before the judicial forums that have intervened in the controversy, is limited to alleging that he was fired in retaliation for his collaboration with the Treasury Department. Therefore, it is my opinion that, in the absence of a claim for some act independent of dismissal, the respondents are not liable under Art. 1802 of the Civil Code, *supra*.

## V

For all the grounds outlined above, I disagree with the opinion of the Majority of the Court as to not impose personal liability on the agents of an employer. On the other hand, in reference to the petitioner's claim under Art. 1802 of the Civil Code, *supra*, I agree with the majority view. I would therefore return the case to the Court of First Instance for further proceedings and to rule in accordance with the foregoing.

## --O--

Dissident opinion issued by Associate Judge Estrella Martínez.

Unfortunately, this Court wrongly finds that agents, supervisors, and representatives of a company are not included in the definition of *employer* **\*412** of Act No. 115-1991, known as the Employer Repression Action Act, 29 LPRA sec. 194 *et seq.*

Likewise, a Majority of this Court rules that it is appropriate to dismiss the cause of action filed for non-contractual damages under Art. 1802 of the Civil Code, 31 LPRA sec. 5141. Again, in making this determination, the Majority of this Court insists that the labor statutes prevent the use of any other remedy or cause of action provided by another statute. Likewise, a majority of this Court understands that there are no claims of independent tortious acts against the defendants.

I do not share the reasoning of the Majority of this Court, so I am obliged to dissent and reiterate my dissenting views with regard to the possibility of bringing an action for damages.

## I

The facts which give rise to the controversy before our consideration are set out in the opinion of this Court. It follows that Mr. Héctor Santiago Nieves filed a claim against Braulio Agosto Motors, Inc., Mr. Braulio Agosto Vega, as owner of the corporation, and Ms. Norma Agosto Flores, as president of the corporation.

Mr. Santiago Nieves alleged that the corporation, Mr. Agosto Vega and Ms. Agosto Flores incurred unjustified dismissal and retaliation. He also argued that the latter caused him damages through their intentional and culpable actions as a result of discriminatory and retaliatory practices.

Before the Court of First Instance the controversy arose as to whether the action filed for unjustified dismissal, reprisals and damages against Mr. Agosto Vega and Ms. Agosto Flores, in his personal character **\*413.** The primary court issued a Partial Judgment in which it dismissed with prejudice the actions brought, on the grounds that the defendants could not respond in their personal capacity for retaliation or damages. [1] This determination was upheld by the Court of Appeals and is the issue before us.

*Certified translation from the original text in Spanish into the target language English.*
*Done on 19/DEC/2019 by Veronique C. Haesebrouck – Certified Translator – 787-238-8781*

WESTLAW © 2019 Thomson Reuters. No claim to original U.S. Government Works.  18

## II

In analyzing the provisions contained in Law No. 115-1991, *supra*, this Tribunal rules out that the definition of employer contained in the statute expressly includes the agents, supervisors and representatives of a company. See Art. 1(b) of Law No. 115-1991 (29 LPRA sec. 194(b)).

To arrive at such a conclusion, the Majority of this Court states that the raison d'être of Law No. 115-1991 was to proscribe retaliation against an employee who provided information in a legislative, judicial or administrative **\*414** process. Similarly, it recognizes that "conduct prohibited by this legislation often unfolds through acts committed by the employer's agents during the exercise of their duties. Majority opinion, p. 378.

However, in an exercise that discards the clear letter of the statute and the intention to eradicate this type of conduct from employment, the Majority of this Tribunal concludes that liability for retaliation excludes the employer's agents by concluding that the statutory reference was only for the purpose of imposing vicarious liability on the employer. It also dispenses with the principle that any doubt in the labor statutes requires an interpretation in favor of the working class that was sought to be protected. See: *Cordero Jiménez v. UPR*, 188 DPR 129, 139 (2013), and cases cited therein; *Whittenburg v. Col. Ntra. Sra. del Carmen*, 182 DPR 937, 951 (2011).

The extent and scope of the application of Law No. 115-1991 is unquestionable. This defined the word "employer" to define it as any person who has even one employee and affirm that in this conception of what is a "employer" are *included* their agents. 29 LPRA sec. 194. The definitions thus contained are very broad in the interest of establishing a policy of protection of employees from retaliatory acts. Thus, it is reflected in the legislative intent that stands out from the history of the statute.

To this end, we have stated that the Explanatory Memorandum emphasises that the purpose of the legislation is the protection of workers' jobs. See: *Cordero Jiménez v. UPR*, supra, pp. 142-143; 55 Journal of Sessions of the Legislative Assembly (Senate), Procedures and Debates of the Legislative Assembly, P. del S. 987, 24 June 1991, p. 1924. In turn, the legislative history reflects that the scope of the measure was extensive. The Journal of Sessions highlights that the project's primary purpose was to broaden the definitions of "employee," "employer," and **\*415** "person" so that it would be understood to apply to any employee, employer, or person without distinction of position, corporation, or entity. See: *Cordero Jiménez v. UPR*, supra; Journal of Sessions, *supra*, p. 1926; Journal of Sessions, Report of the Committee on Labor, Veteran's Affairs and Human Resources, *supra*, p. 1927.

The interpretation endorsed by the Majority of this Court departs from the legislative intention that was aimed at expanding who is covered by the statute as well as who engages in proscribed conduct. This leads to the unfortunate consequence that, in cases such as autos, where agents of the employer who preside over and own the company are not subject to retaliation despite acting in contravention of the legislative intent to eradicate the type of conduct involved in firing an employee for the possibility of participating in government investigative processes.

As comrade Associate Judge Rivera Garcia rightly points out in part II of his dissenting and concurring opinion, this Court has delineated the contours of an "employer" in labor law for the purpose of including supervisors, officers, administrators, and agents of the employer in various labor laws, such as legislation on sexual harassment in employment, sex discrimination, and employment discrimination. For its part, Law No. 115-1991 expressly includes the agents of the employer in its definition; therefore, I understand that it is opposable to them in their personal character and not only refers to the vicarious responsibility that every employer has on his employee.

Therefore, I differ from the interpretation supported by a Majority of this Tribunal that such a reference is to the sole effects of imposing vicarious liability on the employer.

In my opinion, Mr. Agosto Vega and Mrs. Agosto Flores are subject, if proven, to a personal action by **\*416** reprisals in which, if they incur in the referred violation, they will be subject to the remedies provided by the referred statute.

*Certified translation from the original text in Spanish into the target language English.*
*Done on 19/DEC/2019 by Veronique C. Haesebrouck – Certified Translator – 787-238-8781*


Finally, I disagree with the expressions endorsed by a majority of this Court in order to prejudge whether the defendants are liable for non-contractual damages. The Majority of this Court reiterates that an employee whose labor rights are violated has no remedies other than the sanctions and compensations contained in special labor laws.

In this regard, I insist on my dissenting opinion issued in *SLG Pagán-Renta v. Walgreens*, 190 DPR 251, 280 (2014), to the effect that labor laws do not constitute impediments to being creditors of other remedies that were not considered in the special statute. In the absence of a legal provision, or when a legal situation is not specifically confronted in the special law, supplementary sources, such as the Civil Code, are used. ́Id, p. 283. We cannot forget that whoever produces damage by his action or omission is obliged to compensate it, without limitation or exception of any kind. *Hernández v. Fournier*, 80 DPR 93, 96-97 (1957).

As a corollary, I am unable to endorse what is set forth in the Majority Opinion for the purpose of rejecting compensatory remedies beyond those provided in labor laws. This is despite the fact that, in this case, the Majority of this Court concludes that there is no impediment to the action for damages against Mr. Agosto Vega and Ms. Agosto Flores because they reason that the provisions of Law No. 115-1991 do not apply to them, so they do not see an impediment to the action for damages. However, it determines that the allegations contained in the complaint filed do not adduce action independent to dismissal under the protection of damages. In **\*417** that sense, due to the stage of this case, I am of the opinion that the claim for non-contractual damages alleged in the lawsuit filed should not be summarily dismissed. Labor laws do not exclude a party's civil liability for its actions and omissions.

## III

Therefore, I dissent from this Tribunal's determination that agents, supervisors, and representatives of the employer are not liable in their personal capacity if they engage in a conduct prohibited by Law No. 115-1991, *supra*. Likewise, I do not agree with the opinion of this Court that the action of Art. 1802 of the Civil Code, *supra,* should be dismissed. I would therefore have referred the case back to the Court of First Instance for clarification of *all* the actions brought by the petitioner.

Footnotes

1    The appellants appeared in a special way without submitting to the jurisdiction of the Court of First Instance, as they understood that the summonses were not properly served. As a result, the parties filed several motions regarding the adequacy of the locations and jurisdiction of the primary forum. The Court of Appeals ruled that, regardless of the sufficiency of the summonses, the respondents voluntarily submitted to the jurisdiction of the court by appearing and presenting defenses. This determination was not challenged in the appeal to this Court, so the controversy over the filings is not before us.

2    "The term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees [...], and any agent of such a person [...]".

3    See: *Fantini v. Salem State College*, 557 F.3d 22, 30 (1st Cir. 2009); *Tomka v. Seiler Corp.* 66 F.3d 1295, 1313-1316 (2nd Cir. 1995); *Sheridan v. E.I. DuPont de Nemours and Co.* 100 F.3d 1061, 1077-1078 (3rd Cir. 1996); *Lissau v. Southern Food Services, Inc.* 159 F.3d 177, 181 (4th Cir. 1998)(noting that "all circuits that have faced this problem [...] have rejected personal liability claims"); *Clanton v. Orleans Parish School Bd.* 649 F.2d 1084, 1099 (5th Cir. 1981); *Shager v. Upjohn Co.* 913 F.2d 398, 404 (7th Cir. 1990); *Lenhardt v. Basic Institute of Technology, Inc.* 55 F.3d 377, 381 (8th Cir. 1995); *Miller v. Maxwell's Intern. Inc.* 991 F.2d 583, 587-88 (9th Cir. 1993); *Hayes v. Williams*, 88 F.3d 898, 901 (10th Cir. 1996); *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1990); *Gary v. Long*, 59 F.3d 1391, 1399 (D.C. Cir. 1995).

4    As can be discerned, the definition of "employer" in Title VII differs from that provided in Art. 1(b) of Act No. 115 -1991, *supra*, as to the number of employees that the employer must have and as to the fact that the employer's industry must relate to interstate commerce. However, these differences arise for two fundamental reasons in the federalist political scheme that have little to do with the social and remedial purpose of this type of legislation. First, it was intended to relate the scope of Title VII to interstate commerce so that its adoption would be in the limited powers of Congress.

    J.R. Franke, *Does Title VII Contemplate Personal Liability For Employee/Agent Defendants?* 12 Hofstra Lab. L.J. 39, 59 (1994).



There is no compelling reason to interpret the differences in the two definitions as anything other than a restriction on the scope of the kind of legislation Congress can impose under the powers granted to it by the Commerce Clause of the U.S. Constitution and as a public policy exception to favor small businesses. Id. These differences in federal law cannot serve as a basis for a clear statement that their reasoning is not inherent in the interpretation of state legislation with virtually identical wording. Note that although the employer is defined as an employer of fifteen persons or more, in federal law, or an employer of one or more, in Act No. 115-1991, *supra*, this does not affect the scope of the cause of action against agents because agents, by definition, do not have employees.

5    It should be noted that, in our jurisdiction, dismissal in itself is not considered a tortious act, since a private employer can always dismiss its employee. Of course, if you do so without just cause, you will be subject to one month's payment only. See *Romero et als. v. Cabrer Roig et als.* 191 DPR 643, 651 (2014).

1    It is worth mentioning that I agree to dismiss the cause of action under Art. 1802 of the Civil Code, 31 LPRA sec. 5141. See *SLG Pagán-Renta v. Walgreens,* 190 DPR 251 (2014); *Soc. de Gananciales v. Royal Bank de P.R.* 145 DPR 178 (1998). Therefore, the discussion of this Opinion will focus on Law No. 115-1991.

2    See Art. 2(a) of Law No. 115-1991 (29 LPRA sec. 194a(a)):

"No *employer* may fire, threaten or discriminate against an employee with respect to the terms, conditions, compensation, location, benefits or privileges of employment because the employee offers or attempts to offer, verbally or in writing, any of the following testimony, expression or information before a legislative, administrative or judicial forum in Puerto Rico, as well as testimony, expression or information offered or attempted to be offered, in the company's established internal procedures, or before any employee or representative in a position of authority, when such expressions are not of a defamatory nature nor do they constitute disclosure of privileged information established by law. (Emphasis added).

3    Majority Opinion, p. 379. See Art. 11 of Law No. 17-1988 (Employment Harassment Act), 31 LPRA sec. 155j ("Any *person* responsible for sexual harassment in employment, as defined in secs. 155 to 155m of this title, shall incur civil liability" [emphasis added]). See also Art. 21 of Law No. 69-1985 (Sex Discrimination in Employment Act), 29 LPRA sec. 1341 ("Every *person*, employer and worker organization as defined in this Chapter, who incurs any of the prohibitions thereof [...] [shall incur civil liability" [emphasis added]).

4    "*Employer*. -It means all employers equally, whether these employers are public or private, public corporations or any other denomination of employers existing in the present or created in the future, any natural or juridical person of any nature, including the Government of the Commonwealth of Puerto Rico, its three branches and their instrumentalities or public corporations, municipal governments and any of their instrumentalities or municipal corporations, which for profit or not, employs persons through any kind of compensation and *their agents and supervisors*. (Emphasis added). Art. 1 of Law No. 115-1991 (29 LPRA sec. 194).

5    By this I mean the contradiction between the precedent created today *vis à vis the* expressions of this Tribunal recognizing, in the context of sexual harassment, a personal cause of action against those who engage in conduct proscribed under Laws Nos. 17, 69 and 100. *Rosario v. Dist. Kikuet, Inc.* supra, at p. 648 ("[T]his Court finds that an agent, officer, administrator or supervisor of a company is civilly liable in his personal capacity for the purposes of Acts Nos. 17, 69 and 100, in addition to the actual employer, for acts [...] committed by him against a worker or employee of that employer").

1    See Argument of the requesting party, p. 3.

2    Id, pp. 5-6.

3    Id, p. 4.

4    See Response to the Complaint, Appendix to the Appeal, p. 14.

5    See Argument of the requesting party, p. 5.

6    See Complaint, Appendix of Appeal, pp. 1-8.

7    29 LPRA 185a *et seq.*

8    29 LPRA sec. 194 *et seq.*

9    31 LPRA secs. 5141 y 5142.

10    The defendants appeared without submitting to the jurisdiction of the court. They alleged that their summonses were not served in accordance with the notice requirements of the Rules of Civil Procedure. The parties litigated this matter through multiple motions before the primary forum. However, like the Court of Appeals, we must point out that, regardless of the sufficiency of the summonses, the respondents filed a response to the complaint in which they answered the allegations against them and presented affirmative defenses. Those acts constituted a voluntary submission of the respondents to the jurisdiction of the primary forum. See: *Market v. Panthers Military Soc.* 125 DPR 98 (1990); *Echevarría Jiménez v. Sucn. Pérez Meri,* 123 DPR 664, 686 (1989).

*Certified translation from the original text in Spanish into the target language English.*
*Done on 19/DEC/2019 by Veronique C. Haesebrouck – Certified Translator – 787-238-8781*



11   See Response to the Complaint, Appendix to the Appeal, pp. 9-20.

12   See Order, Id, pp. 48-50.

13   Id.

14   Motion in Compliance with Order, Id, pp. 53-55.

15   Response to Motion in Compliance with Order, id, pp. 58-63.

16   Rejoinder to reply to motion in compliance with order, id, pp. 64-68.

17   Partial judgment, id, pp. 69-70.

18   *Certiorari* before the Court of Appeal, id, pp. 74-88.

19   Judgment of the Court of Appeals, id, pp. 89-110.

20   Mr. Santiago Nieves filed an appeal, which we accepted as a *certiorari* because it was the appropriate remedy.

21   See: Art. 14 of the Puerto Rico Civil Code, 31 LPRA sec. 14; *Cordero Jiménez v. UPR*, 188 DPR 129, 138 (2013); *S.L.G. Rivera Carrasquillo v. A.A.A.* 177 DPR 345, 362 (2009).

22   Id.

23   R.E. Bernier and J.A. Cuevas Segarra, *Approval and Interpretation of the Laws in Puerto Rico*, 2nd ed. rev., San Juan, Pubs. JTS, 1987, Vol. I, p. 241.

24   *Aquino González v. A.E.E.L.A.* 182 DPR 1, 39 (2011); *Morales et als. v. Marengo et als.* 181 DPR 852, 859 (2011).

25   *Asoc. Fcias. v. Caribe Specialty et al. II*, 179 DPR 923, 938-939 2010); *Pueblo v. Zayas Rodríguez*, 147 DPR 530, 537 (1999).

26   *Dorante v. Wrangler of P.R.* 145 DPR 408, 417 (1998)

27   *Cordero Jiménez v. UPR*, supra, p. 139; *Acevedo v. P.R. Sun Oil Co.* 145 DPR 752, 768 (1998).

28   *Whittenburg v. Col. Ntra. Sra. del Carmen*, 182 DPR 937, 951 (2011); *Jiménez, Hernández v. General Inst.* 170 DPR 14, 41 (2007).

29   1991 (Part 1) Puerto Rico Laws 956, 957.

30   29 LPRA sec. 194(a); *Rivera Prudencio v. Mun. de San Juan*, 170 DPR 149, 169 (2007).

31   Art. 2 of Law No. 115-1991 (29 LPRA sec. 194a).

32   Id See also *Feliciano Martes v. Sheraton*, 182 DPR 368, 393 (2011).

33   Statement of Reasons for Law No. 115-1991, Laws of Puerto Rico, *supra*, p. 957.

34   29 LPRA sec. 194b.

35   29 LPRA sec. 194 (ed. 2009).

36   Among these, Law No. 17 of April 22, 1988 (29 LPRA sec. 155 *et seq.* ) (Employment Harassment Act); Law No. 69 of July 6, 1985 (29 LPRA sec. 1321 *et seq.* ) (Sex Discrimination Act), and Law No. 100 of June 30, 1959 (29 LPRA sec. 146, *et seq.* ) (Employment Discrimination Act).

37   Id, p. 645.

38   29 LPRA sec. 194.

39   Id, p. 527.

40   Id, p. 260.

41   For example, see: *Benavent Stoner v. Caribbean Harbor Pilots Trust Funds*, KLAN201100798; *Sánchez Barreto v. Swiss Just De Puerto Rico, Inc.* KLCE200300904.

42   See: *Rivera Velázquez v. Edwards Lifesciences Corp.* KLAN200500285; *Dones Batista v. Municipality of Canóvanas*, KLCE200800520.

43   Among these: *Rosario v. Distribuidora Kikuet, Inc.* supra; *Irizarry v. J & J Const. Prods. Co., Inc.* 150 DPR 155 (2000); *Ramírez de Ferrer v. Mari Bras*, 142 DPR 941 (1997).

44   See: *Hernandez v. Raytheon Serv. Co. P.R.* 2006 WL 1737167 (D. PR 2006); *Arroyo-Perez v. Demir Group Intern.* 733 F.Supp.2d 322, 324 (D. PR 2010).

45   Véanse: *Torres v. House of Representatives of the Commonwealth of P.R.*, 858 F.Supp.2d 172 (D. PR 2012); *Rivera Maldonado v. Hospital Alejandro Otero Lopez*, 614 F.Supp.2d 181 (D. PR 2009).

46   See Part II-B of this Dissenting and Concurring Opinion.

47   Id.

48   See Statement of Reasons for Law No. 169-2014 (2014 (Part 2) Puerto Rico Laws 1646).

49   Majority opinion, p. 380.

50   Section 4 of the Act (29 LPRA sec. 194b).

51   See: Art. 48 and 75 of the Criminal Code (33 LPRA secs. 5081 and 5111).

1    Note that, in the present case, before the Court of First Instance, the lack of service of the summons on the person of Braulio Agosto, Inc., Mr. Braulio Agosto Vega and Ms. Norma Agosto Flores was presented as a defense. From the file it emerges that

Certified translation from the original text in Spanish into the target language English.
Done on 19/DEC/2019 by Veronique C. Haesebrouck – Certified Translator – 787-238-8781

Mr. Héctor L. Santiago Nieves accepted not to have summoned Mr. Agosto Vega or Ms. Agosto Flores. He even asked for an extension to fill out the site. However, both the request for an extension of time to serve and the controversy over jurisdiction over the parties were *never* heard by the Court of First Instance, since the latter proceeded to issue the Partial Judgment that is the subject of the appeal before us. Agosto Vega and Agosto Flores, concluding, in the merits, that the cause of action for retaliation or damages against them did not proceed. *Therefore, at this point in time, we understand that the issue of due diligence should not be dealt with by this Court.* In turn, we caution that the defendants' actions were at all times *not subject to the jurisdiction of the court* and the lack of due process was brought to the court's attention from the first appearance of the defendants. In addition, in compliance with the order of the primary forum, the respondents presented their position *without submitting to jurisdiction and stressed the lack of diligence of the site.* Such actions *do not* constitute an explicit or implicit voluntary submission. The answer to a lawsuit or complaint in which the defense of lack of service in the summons is presented, as part of the affirmative defenses, cannot constitute a substantial act that implies a voluntary submission by a party operates to the detriment of the rule that the lack of jurisdiction must be questioned at the first opportunity. See *Cirino Gonzalez v. Adm. Correction et al.* 190 DPR 14 (2014).

---

**End of Document**                                   © 2019 Thomson Reuters. No claim to original U.S. Government Works.

*Certified translation from the original text in Spanish into the target language English.*
*Done on 19/DEC/2019 by Veronique C. Haesebrouck – Certified Translator – 787-238-8781*

WESTLAW   © 2019 Thomson Reuters. No claim to original U.S. Government Works.                23



<u>**Translator Declaration and Certification**</u>

I, Veronique C. Haesebrouck, declare that I am a Certified Court Translator and that I am certified to translate from <u>Spanish</u> to <u>English</u>.

I further declare that to the best of my abilities and belief, this document is a true and accurate translation of the document titled *<u>Santiago Nieves v. Braulio Agosto Motors, 197 D.P.R. 369 (2017)</u>* dated February 14, 2017. The translation includes the full 23-page document.

Prepared and signed on December 19, 2019 in Toa Baja, Puerto Rico

Veronique C. Haesebrouck

Note that the translator only certifies the accuracy of the translation and states no opinion as to the authenticity of the Spanish language documents.